**[Second Circuit Docket No. 26-1671]**

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

---

IBUKUN OGUNBEKUN, as Limited Conservator for
the Estate of Oluwatosin Ogunbekun,
an Incapacitated Person

Plaintiff–Appellant,

– **v.** –

TOWN OF BRIGHTON, BRIGHTON POLICE DEPARTMENT, JULIE KNUTOWICZ, RENEE (STICKLES) FISCHER,

Defendants–Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF NEW YORK (No. 6:15-CV-06332-CJS-MJP)

Hon. Charles J. Siragusa, U.S.D.J.

APPELLANT'S BRIEF

Plaintiff-Appellant: Ibukun Ogunbekun, Pro se

12697 Victory Lakes Loop Bristow, VA 20136

Tel: 585-737-8880;  Email: ibukun.ogunbekun@yahoo.com

**TABLE OF CONTENTS**

| **Section** | **Page** |
| --- | --- |
| Table of Contents | 2 |
| Table of Authorities | 4 |
| Statutes & Rules | 6 |
| Statement of Subject Matter and Appellate Jurisdiction | 7 |
| Statement of the Issues Presented for Review | 7 |
| Statement of the Case | 9 |
| Statement of Facts | 15 |
| Summary of the Argument | 17 |
| Argument | 19 |
| District Court Improperly Determined that Plaintiff-Appellant was barred from filing Rule 60(b) motion pro se .......................... | 19 |
| District Court Erred in its Analyses of Newly Discovered Evidence ...... | 23 |
| District Court Omitted Critical Evidence in the Review of Rule 60(b) Motion ............................................................ | 23 |
| Satellite Images are Compelling (New) Evidence that Support Vacatur of District Court Order Under Rule 60(b)(2) ........................ | 25 |
| District Court Erred in its Analyses of Evidence of Fraud, Misrepresentation and Misconduct Under Rule 60(b)(3) .................. | 38 |
| Materially Altered Police Radio Log and False EDPRT Training Claims ........................................................ | 38 |
| Fabricated Depositions and Inconsistent Sworn Statements ................ | 44 |

| **Section** | **Page** |
| --- | --- |
| District Court Abused Its Discretion and Undermined Due Process ……. | 49 |
| District Court Erred in Failing to Uphold First Amendment Rights …….. | 52 |
| Conclusion | 56 |
| Certificate of Compliance | 57 |
| Certificate of Service | 58 |

**TABLE OF AUTHORITIES**

**Cases:**

*Berrios v. New York City Housing Authority*, 564 F.3d 130 (2d Cir. 2009) .......... 22, 41, 47

*Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 286 F. Supp. 2d 309 (S.D.N.Y. 2003) .......... 41, 42, 46, 47

*Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 547 F.3d 115 (2d Cir. 2008) .......... 42

*Coggins v. County of Nassau*, 988 F. Supp. 2d 231 (E.D.N.Y. 2013) .......... 42

*Counterman v. Colorado*, 600 U.S. 66 (2023) .......... 18, 53

*Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003) .......... 33

*Esposito v. New York*, 698 F. App'x 624 (2d Cir. 2017) .......... 19, 22, 48

*Garcia v. Griffin*, 11th Cir. 2023 .......... 22

*Geauga County Board of Health v. Malliski*, 2022-Ohio-2631 (Ohio App. 2022) .......... 49

*Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010) .......... 17, 21, 22

*In re Lehman Brothers Holdings Inc.*, 2022 WL 3417720 (S.D.N.Y. 2022) .......... 43

*In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 (2d Cir. 2013) .......... 19, 22, 48

*Jarvis v. Vergera*, 2022 WL 3417720 (N.D. Miss. 2022) .......... 51

*Jeffreys v. United Technologies Corp.*, 69 F. App'x 28 (2d Cir. 2003) .......... 48

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) .......... 43, 55

*Morgan v. Tincher*, 90 F.4th 172 (4th Cir. 2024) ................................ 37, 48

*Pappas v. Philip Morris, Inc.*, 915 F.3d 889 (2d Cir. 2019) .............. 17, 21, 22

*Phillips v. Stear, 783 S.E.2d 567, 574 (W. Va. 2016)* ................................ 47

*Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978) .................. . 46, 47

*Silverman v. Rosenfeld*, 100 F. App'x 27 (2d Cir. 2004) ......................... 48

*Smalls v. United States*, 471 F.3d 186 (D.C. Cir. 2006) ........................... 41

*Smith v. State of Oklahoma*, 418 F. Supp. 907 (W.D. Okla. 1976) .............. 45

*Snyder v. Phelps*, 562 U.S. 443 (2011) ............................................. 53

*Stevens v. Miller*, 676 F.3d 62 (2d Cir. 2012) ......................... 19, 37, 39, 41

*Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281 (2d Cir. 2005) ............... 20

*United States v. Demjanjuk*, 101 F.R.D. 680 (N.D. Ohio 1983) .................. 43

*United States v. Dillard*, 891 F.3d 151 (4th Cir. 2018) ........................... 37

*Wong Sun v. United States*, 371 U.S. 471 (1963) ............................. 18, 55

**Statutes & Rules:**

42 U.S.C. § 1983 ........................................................ 7, 9, 15

28 U.S.C. § 1291 ........................................................ 7

28 U.S.C. § 1331 ........................................................ 7

Fed. R. Civ. P. 60(b) ........................................................ 9, 13

Fed. R. Civ. P. 6 ........................................................ 51

Fed. R. Civ. P. 17(c) ........................................................ 22

Fed. R. App. P. 4(a)(1) ........................................................ 7

18 U.S.C. § 1512(3)(C)(1) ........................................................ 32, 40

18 U.S.C. § 1506 ........................................................ 32, 40

WDNY Local Rule 5.2(h) ........................................................ 8, 13, 49, 50, 51

Second Circuit Local Rule 32.1 ........................................................ 57

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is a civil rights action brought under 42 U.S.C. § 1983, arising from the unlawful seizure and use of excessive force against Oluwatosin Ogunbekun, an intellectually disabled and mentally incapacitated woman, by police officers of the Brighton Police Department on May 29, 2012. The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 1983.

This Court has appellate jurisdiction under 28 U.S.C. § 1291, which grants jurisdiction over appeals from final decisions of the district courts. The Decision and Order of the United States District Court for the Western District of New York (Hon. Charles J. Siragusa, U.S.D.J.), denying Plaintiff-Appellant's Rule 60(b) motion for relief from judgment, was filed on May 20, 2026 (ECF No. 98). The Notice of Appeal was timely filed on June 17, 2026 (ECF No. 100), within the thirty (30) day period prescribed by Fed. R. App. P. 4(a)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**1.** Whether the District Court erred and abused its discretion in determining that Dr. Ibukun Ogunbekun, as Limited Conservator for the Estate of his incapacitated daughter, Oluwatosin Ogunbekun, was barred from filing a Rule 60(b) motion pro se, where the estate has no other beneficiaries or

creditors, and where the Second Circuit has recognized a narrow exception for sole beneficiaries proceeding pro se in such instances in the past.

**2.** Whether the District Court abused its discretion in denying Plaintiff's Rule 60(b)(2) motion by dismissing newly discovered evidence – including Google satellite imagery and letter from the Monroe County Sheriff's Office disavowing Officer Stickles' purported EDPRT training – as "largely cumulative and/or merely impeaching," without conducting meaningful analysis of the evidence on its merits.

**3.** Whether the District Court abused its discretion under Rule 60(b)(3) in concluding that Plaintiff failed to present clear and convincing evidence of fraud, misrepresentation, or misconduct by Defendants and key witnesses, despite uncontested evidence of materially altered police radio logs, fabricated deposition testimony, and materially inconsistent sworn statements by Defendant Stickles.

**4.** Whether the District Court violated Plaintiff's right to due process by deciding the Rule 60(b) motion a mere five days after filing, before opposition papers were due or filed, and without granting the response period required by WDNY Local Rule 5.2(h).

**5.** Whether the District Court erred in failing to address Plaintiff-Appellant's First Amendment argument that the verbal expressions attributed to Oluwatosin Ogunbekun constituted protected speech rather than "true threats" sufficient to justify a mental hygiene arrest.

## STATEMENT OF THE CASE

This action arises under 42 U.S.C. § 1983, alleging that police officers of the Town of Brighton violated the Fourth Amendment rights of Oluwatosin Ogunbekun ("Tosin"), an intellectually disabled adult, by subjecting her to an unlawful mental hygiene arrest and excessive force on May 29, 2012. The case was tried on summary judgment before the Hon. Charles J. Siragusa, United States District Judge for the Western District of New York (WDNY).

On May 15, 2025, the District Court issued a Decision and Order granting Defendants' motion for summary judgment and dismissing Plaintiff's claims in their entirety (ECF No. 90). On May 16, 2025, the Clerk entered judgment for Defendants. As a courtesy, Plaintiff's counsel, Anna Marie Richmond ("Ms. Richmond"), filed a Notice of Appeal on June 13, 2025 (ECF No. 92), but declined to represent Plaintiff on appeal. On November 13, 2025, the United States Court of Appeals for the Second Circuit ("Second Circuit") dismissed the appeal as lacking any arguable basis either in law or in (Mandate, ECF No. 94).

On May 13, 2026, Richmond, who was still listed as attorney of record on the District Court's docket, filed a motion to withdraw as counsel (ECF No. 95). On May 15, 2026, Dr. Ogunbekun, proceeding pro se as Limited Conservator for the Estate of Oluwatosin Ogunbekun, filed the subject motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(2)&(3) (ECF No. 96). Five days later, on May 20, 2026, the District Court issued its Decision and Order granting

Richmond's motion to withdraw and denying Plaintiff's Rule 60(b) motion. (ECF No. 98).

The District Court denied the Rule 60(b) motion on two grounds: (1) that Dr. Ogunbekun could not represent the estate pro se because he is not a licensed attorney; and (2) alternatively, that the motion lacked merit because the evidence presented was "largely cumulative and/or merely impeaching" and failed to show fraud, misrepresentation, or misconduct by clear and convincing evidence. Dr. Ogunbekun filed a Notice of Appeal on June 17, 2026 (ECF No. 100), appealing the District Court's denial of the Rule 60(b) motion.

Back in May 2025, when Ms. Richmond informed of her decision to not represent Appellant on appeal, Dr. Ogunbekun pleaded with her to stay on, recalling past difficulty in retaining experienced civil rights attorneys in the Central/Western New York area. Ms. Richmond declined, stating that as a solo practitioner who would soon be retiring, she could not take on the additional workload that a summary judgment appeal would entail. Ms. Richmond filed a motion to withdraw as Counsel with the Second Circuit on June 23, 2025, citing relevant portion of the retainer agreement in her affirmation in support of the motion to withdraw: "This agreement does not cover any appeals from an adverse decision." (ECF No. 95-1, ¶19). The Second Circuit granted Ms. Richmond's request the next day, June 24, 2025. (ECF No. 95-2, p. 1 of 1). Dr. Ogunbekun

presumed that since the District Court was notified of attorney's withdrawal, the appellate court order equally, applied to the lower court.

Dr. Ogunbekun felt that Tosin would be better represented by someone who knew the law rather than one who knew only the facts of the case, hence, he contacted several attorneys across New York and neighboring states but to no avail. Ms. Richmond also assisted in identifying attorneys and local resources that could be helpful. After multiple unsuccessful attempts to retain counsel, Appellant in July 2025, filed a motion with the Second Circuit requesting that Tosin be allowed to appeal In Forma Pauperis (IFP) and for a court-appointed attorney to represent her – Tosin is intellectually disabled and is on public assistance.

On November 13, 2025, the Second Circuit denied the IFP application as unnecessary since Dr. Ogunbekun had already paid the $605 filing fee with the Notice of Appeal. The appeal was dismissed for lacking arguable basis either in law or in fact, understandably, because Appellant sought to invoke Rule 60(b) in an appellate rather than trial court. (Mandate, ECF No. 94). This was a procedural error of law made by a non-attorney, pro se litigant filing an appeal in a federal court for the first time. It was to forestall such error that Appellant requested court-appointed counsel to represent Tosin, in the first instance. However, the dismissal of the appeal did not invalidate evidence presented by Dr. Ogunbekun; these remain uncontested to date.

Believing that Ms. Richmond had already been relieved as Counsel, Dr. Ogunbekun proceeded to file a Rule 60(b) motion, pro se and contacted the District Court on May 13, 2026. The deadline to file was May 15, 2026. The Court informed Dr. Ogunbekun that going by their records, Plaintiff was still represented by Counsel. The Court then advised Dr. Ogunbekun to contact Ms. Richmond and request that she file a motion to withdraw as Counsel in the WDNY, since she had effectively been relieved of that responsibility almost a year prior by the Second Circuit. Ms. Richmond obliged same day, May 13, 2026. (ECF No. 95-1).

One could argue that a Rule 60(b) motion is not an appeal since it is filed and decided in the trial court, hence, Counsel could and should have been available to file the post-judgment motion in so far as it was within the one-year period following entry of the summary judgment order and decision. Any such argument would however, be defeated by the Second Circuit order granting Ms. Richmond's motion to withdraw as Counsel. Appellant contends that if even there was a remote chance that Ms. Richmond could file the Rule 60(b) motion in the forty-eight (48)-hours preceding the deadline (that is, May 13-15, 2026), Ms. Richmond's motion filed in the WDNY on May 13, 2026, was unequivocal: "I do not represent Dr. Ogunbekun any longer; we amicably parted ways in May of 2025. I have previously notified this Court, in the Notice of Appeal, that my representation of Dr. Ogunbekun had ended. The Court of Appeals for the Second

Circuit permitted me to withdraw as counsel in this matter." (*Id*. Page 3 of 4 at ¶¶15-17).

Dr. Ogunbekun thanked Ms. Richmond for her cooperation and they parted ways amicably. It is important that the record be set straight in this regard – Dr. Ogunbekun did not incite, incent or compel Counsel to withdraw her services on May 13, 2026 or at any time prior; the Second Circuit already relieved her of that responsibility on June 24, 2025, and the District Court was duly notified.

On May 15, 2026, Dr. Ogunbekun, proceeding pro se as Limited Conservator for the Estate of Oluwatosin Ogunbekun, filed the subject motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(2)&(3) (ECF No. 96). Five days later, on May 20, 2026, the District Court issued its Decision and Order (ECF No. 98), denying Plaintiff's Rule 60(b) motion. The Court denied the Rule 60(b) motion on the grounds that: (1) Dr. Ogunbekun could not represent the estate pro se because he was not a licensed attorney; and (2) the motion lacked merit because the evidence presented was "largely cumulative and/or merely impeaching" and failed to show fraud, misrepresentation, or misconduct by clear and convincing evidence.

Ms. Richmond's motion to withdraw was granted seven days after filing, on May 20, 2026, in the body of the decision and order denying Plaintiff's Rule 60(b) motion, even though, these were two separate motions filed on different days by different individuals. (ECF No. 98, p. 3, ¶2 and p. 6, ¶2). Dr. Ogunbekun,

thereafter, filed a Notice of Appeal on June 17, 2026 (ECF No. 100), appealing the District Court's denial of the Rule 60(b) motion.

## STATEMENT OF FACTS

On May 29, 2012, Officers of the Brighton Police Department ("Brighton PD") executed a mental hygiene arrest ("MHA") of Oluwatosin Ogunbekun (Tosin), an intellectually disabled and mentally incapacitated adult, on Wintergreen Way in the Town of Brighton, New York. Officer Renee Stickles arrived at 1:28 PM and invoked the MHA at 1:44 PM – just sixteen minutes after arriving on scene.

During the arrest, Tosin sustained a head injury. Dr. Ibukun Ogunbekun, Tosin's father and legal guardian, witnessed the events and arrived at 84 Wintergreen Way within minutes of the illegal seizure.

On May 28, 2015, Dr. Ogunbekun commenced this action under 42 U.S.C. § 1983, alleging that Officers Renee Stickles and Julie Knutowicz violated Tosin's Fourth Amendment rights through unlawful seizure and excessive force. On June 5, 2015, Judge Siragusa ruled that Dr. Ogunbekun could not represent Tosin in federal court because he was not a licensed attorney. (ECF No. 3, p. 3 of 3). An amended complaint was filed on June 29, 2015, with Tosin named as Plaintiff, pro se. (Docket No. 4).

On September 7, 2018, Dr. Ogunbekun was appointed Limited Conservator of the Estate of Oluwatosin Ogunbekun. A second amended complaint was filed on December 15, 2018, by Rafael Gomez, Esq. (ECF No. 32). The second amended complaint is currently the operative complaint.

On June 27, 2022, Defendants moved for summary judgment (ECF No. 82-19). On August 31, 2022, Plaintiff filed the summary judgment reply and on May 15, 2025, the District Court granted summary judgment for Defendants/movants (ECF No. 90), finding that Defendants had not subjected Tosin to excessive force as a matter of law. On May 16, 2025, the Clerk entered judgment for Defendants. On May 15, 2026, Dr. Ogunbekun filed the Rule 60(b) motion (ECF No. 96), presenting newly discovered Google satellite imagery (released August 2023 and captured July 2025); a letter from the Monroe County Sheriff's Office dated April 21, 2026, disavowing Officer Stickles' purported EDPRT training; evidence indicative of forged police officers' training records; evidence of materially altered police radio logs; and fabricated witness testimony. The motion was denied five days later on May 20, 2026 (ECF No. 98). The Notice of Appeal was filed on June 17, 2026 (ECF No. 100).

## SUMMARY OF THE ARGUMENT

The District Court erred in finding that Dr. Ogunbekun could not file a Rule 60(b) motion pro se. The Court incorrectly stated that it had "already ruled" that Dr. Ogunbekun could not represent Tosin's estate, when in fact, the 2015 ruling predated Dr. Ogunbekun's appointment as Limited Conservator in 2018. The Second Circuit has recognized a narrow exception allowing a sole beneficiary with no creditors to proceed pro se. (*Guest v. Hansen*, 603 F.3d 15 (2d Cir. 2010); *Pappas v. Philip Morris, Inc.*, 915 F.3d 889 (2d Cir. 2019)).

The District Court abused its discretion under Rule 60(b)(2) by dismissing newly discovered Google satellite imagery and the Monroe County Sheriff's Office letter as "largely cumulative and/or merely impeaching", without analyzing the evidence on their merits.

The District Court abused its discretion under Rule 60(b)(3) by concluding that Plaintiff failed to present clear and convincing evidence of fraud, misrepresentation, or misconduct by Defendants and key witnesses, despite uncontested evidence of materially altered police radio logs, fabricated deposition testimony, and materially inconsistent sworn statements by Officer Stickles.

The District Court violated due process by deciding the Rule 60(b) motion a mere five days after filing, before opposition papers were due or filed, and in contravention of WDNY Local Rule 5.2(h), which requires the Court to set deadlines for opposition and reply papers in pro se cases.

The District Court failed to address Tosin's First Amendment rights, erroneously elevating verbal expressions made during an unlawful seizure to the level of "true threats," contrary to the Supreme Court's holding in *Counterman v. Colorado*, 600 U.S. 66 (2023), which requires a showing of recklessness as to the threatening nature of the statements. Statements made during an illegal seizure are inadmissible under the "fruit of the poisonous tree" doctrine. (*Wong Sun v. United States*, 371 U.S. 471 (1963)).

For these reasons, the District Court's Decision and Order (ECF No. 98) should be reversed, the summary judgment order vacated, and the case restored to the docket for jury trial.

## ARGUMENT

### Summary Judgment Standard

*"A district court's denial of a motion for relief from judgment under Rule 60(b) is reviewed for abuse of discretion." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012); Esposito v. New York, 698 F. App'x 624 (2d Cir. 2017). "A court abuses its discretion when its decision rests on an error of law or a clearly erroneous factual finding." In re Terrorist Attacks on September 11, 2001, 741 F.3d 353 (2d Cir. 2013).* The standard applies to all the arguments below.

### I. District Court improperly determined that Dr. Ogunbekun (Plaintiff-Appellant) was barred from filing Rule 60(b) motion pro se, since he was not a licensed attorney.

In the decision filed May 20, 2026, the District Court makes errors of fact and law regarding representation of the estate of Dr. Ogunbekun's incapacitated daughter (Tosin). Dr. Ogunbekun commenced this lawsuit on May 28, 2015, on Tosin's behalf, in his capacity as legal guardian. The Complaint was captioned: "IBUKUN OGUNBEKUN, On behalf of Ms. O, Plaintiff" v. TOWN OF BRIGHTON; BRIGHTON POLICE DEPARTMENT and JOHN DOES, DEFENDANTS". (Docket #1).

On June 5, 2015, Judge Charles Siragusa ruled that Dr. Ogunbekun could not bring a claim in federal court representing his daughter since, he was not an attorney. The Court then gave Tosin twenty-five (25) days to sign the complaint

and file, obtain counsel and file a complaint signed by counsel, or discontinue the action. (ECF No. 3, p. 3 of 3). An amended complaint filed June 29, 2015, had the name "Oluwatosin Ogunbekun" as Plaintiff, pro se and was signed by Tosin. (Docket #4).

Respectfully, the District Court erred in stating that:

"the application is not properly before the Court, since, as Ogunbekun admits in the motion the Court has already ruled that, since he is not an attorney, he cannot represent his daughter's estate pro se in this action." (emphasis added).

(ECF No. 98, p. 3 of 6, ¶3).

Firstly, Dr. Ogunbekun made no such admission as stated by the District Court, in the Rule 60(b) motion. The memo of law referenced by the Court makes no reference to Tosin's estate. (ECF No. 96, p. 5 of 25, ¶1).

Secondly, the District Court could not have made such determination in 2015, since Dr. Ogunbekun was only appointed Limited Conservator of the Estate of Oluwatosin Ogunbekun on September 7, 2018. This was followed, on December 15, 2018, by filing of a second amended complaint (ECF No. 32), by Rafael Gomez, Esq. The second amended complaint serves as the operative complaint to date. The court erred further, claiming:

"Nor has Ogunbekun shown that any exception to that rule applies. Consequently, the motion is denied for this reason". (ECF No. 98, p. 4 of 6, lines 6-7).

The Court cites *Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005)* as precedent.

Of note, the Rule 60(b) motion filed May 15, 2026, is captioned: "IBUKUN OGUNBEKUN, as Limited Conservator for the Estate of Oluwatosin Ogunbekun, an Incapacitated Person, Plaintiff,"

(ECF No. 96, p. 1 of 25).

The decision of the District Court filed May 16, 2025 (ECF No. 90) bears the caption:

"IBUKUN OGUNBEKUN, as limited conservator for the estate of Oluwatosin Ogunbekun, Plaintiff".

Since the Court was duly notified of Dr. Ogunbekun's appointment as limited conservator for his daughter's estate, it was unclear that the Court needed to be notified of same every time Dr. Ogunbekun is filing a new court document. Indeed, if Dr. Ogunbekun could not proceed with the case pro se, expectedly the Second Circuit would have made this explicit in the mandate entered 12/11/2025 (ECF No. 94), and would not have issued a docket number for this appeal, following the filing of the Notice of Appeal on June 17, 2026. (ECF No. 100).

The Second Circuit has recognized a narrow exception to the general rule barring pro se representation of estates. In *Guest v. Hansen*, 603 F.3d 15, 21 (2d Cir. 2010), the Court held that "the administrator and sole beneficiary of an estate with no creditors may appear pro se on behalf of the estate," reasoning that "it is only a legal fiction that assigns the sole beneficiary's claims to a paper entity – the estate – rather than the beneficiary himself." This exception was reaffirmed in *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019). The estate of

Oluwatosin Ogunbekun has no creditors and no other executor or beneficiary. Besides, Dr. Ogunbekun has not been accused, let alone convicted of any crime pertaining to the management of the estate's assets.[1]

In *Berrios v. New York City Housing Authority*, 564 F.3d 130, 135 (2d Cir. 2009), the Second Circuit held further that a court may not dismiss on the merits the claim of an incompetent person who is not properly represented, and should not issue a ruling until a proper representative is appointed. The District Court failed to consider these binding exceptions and summarily denied the motion without appointing a guardian ad litem or otherwise addressing the representation issue. Fed. R. Civ. P. 17(c).

Respectfully, the District Court abused its discretion in denying the Rule 60(b) motion on grounds that Plaintiff-Appellant could not pursue the claim, pro se, more so as the Court had not previously ruled that Dr. Ogunbekun could not represent the estate of Oluwatosin Ogunbekun. (See *Garcia v. Griffin*, 11th Cir. 2023). The decision of the Court greatly prejudiced Dr. Ogunbekun and prevented the case from being fully litigated. Reversal of the Rule 60(b) order filed May 20, 2026, is warranted in the interest of justice. See *Esposito v. New York*, 698 F. App'x 624 (2d Cir. 2017) (reviewing denial of Rule 60(b) motion for abuse of discretion); *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 (2d Cir.

---

[1] See Guest v. Hansen, 603 F.3d 15, 21 (2d Cir. 2010); Pappas v. Philip Morris, Inc., 915 F.3d 889, 893 (2d Cir. 2019).

2013) (a court abuses its discretion when its decision rests on an error of law or a clearly erroneous factual finding).

Given that the case is dismissed presently, finding an experienced civil rights attorney to take on the case at this time, is an uphill task. Plaintiff-Appellant has in the past, demonstrated commitment to finding and retaining attorneys against tough odds and will diligently seek another attorney once the case is restored to the docket.

## II. District Court erred in its analyses of newly discovered evidence and abused its discretion in denying Plaintiff's request for relief under Rule 60(b)(2).

The District Court rightly notes that it is difficult to succeed on a Rule 60(b) motion. (ECF No. 98, Page 4 of 6, ¶2&3). Only a small proportion is believed to succeed, as courts seek to preserve the finality of judgment and also because the burden of proof required to vacate a judgment based on Rule 60(b), is significantly higher than the “preponderance of evidence” standard. Rule 60(b) demands “clear and convincing” evidence, a standard that many litigants fail to meet. That is not the case here.

### A. District Court Omitted Critical Evidence in the Review of Rule 60(b) Motion.

In its Rule 60(b) decision filed May 20, 2026, the District Court omitted reference to alleged alteration or forgery of key evidence, namely: (i) police radio

log (ECF No. 82-14, p. 2 of 2), and (ii) police officers' training records (ECF No. 85-12, p. 22 of 60). The Court similarly failed to mention new evidence controverting Defendants' claim on training and membership of the Emotionally Disturbed Persons Response Team (EDPRT), organized by the Monroe County Government, New York State. In particular, the letter from Monroe County Sheriff's Office dated May 1, 2026, disavowing knowledge or record of officers' purported EDPRT training and membership was sidelined by the District Court. (See ECF No. 96-1, Pages 13-16 of 21). Plaintiff-Appellant also presented newly available evidence by way of Google satellite imagery that invalidate claims made by Defendants and eyewitness Nate Lenz ("Lenz), Michael Rozzi ("Rozzi") and Nicholas Viglino ("Viglino") – HVAC technicians – regarding probable cause for MHA executed on May 29, 2012, but the District Court is unwilling to break from the false narrative presented by Defendants in their summary judgment motion. (ECF No. 82-19, p. 4 of 20, ¶1).

The District Court, on Pages 4 & 5 of the Rule 60(b) decision, went to great lengths laying out reasons why Rule 60(b)(2)&(3) generally fail, including the "onerous standard" that movants must meet and one-year time limit to file the application. (ECF No. 98, p. 4 of 6). The Court cites multiple authorities from district courts in New York State and the Second Circuit but not once does it show how the legal principles and standards espoused by those authorities nullify evidence submitted by Plaintiff in the Rule 60(b) motion, as to warrant exclusion from review by the Court. The District Court then held that:

"The application fails under 60(b)(2), since it fails to adduce any newly discovered evidence calling into question the Court's grant of summary judgment to Defendants. Rather, it relies on evidence that is largely cumulative and/or merely impeaching.". (*Id.*, p. 5 of 6).

Respectfully, Plaintiff-Appellant disagrees with the decision of the Court on Rule 60(b)(2).

Of note, the District Court did not contest the validity of any evidence submitted as Exhibit to the Rule 60(b) motion but the Court was selective in the evidence referenced in its decision filed May 20, 2026. The Court filtered-off the most compelling and most damning evidence of fraud, misrepresentation and other misconduct by Defendants (and key eyewitnesses), blurring transparency and objectivity, and raising questions as to the diligence and impartiality with which the Court analyzed evidence presented in the Rule 60(b) motion. In essence, the District Court abused its discretion and in a brazen manner.

**B. Satellite Images are Compelling (New) Evidence that Support Vacatur of District Court Order Under Rule 60(b)(2).**

Plaintiff-Appellant respectfully submits that Google Earth images distributed to the public in August 2023 and Street Maps captured July 2025 (attached as Exhibits A, B and C to the Rule 60(b) motion), qualify as "new evidence" since they were released after the August 31, 2022 date that Plaintiff filed the summary judgment reply. (ECF No. 96-1, p. 1-8 of 21). The images cannot with any measure of objectivity be dismissed as being "largely cumulative

and/or merely impeaching”. Quite the contrary, they show convincingly and with precise distance markings, the implausibility of Defendant Stickles’ claim that Tosin was in the middle of the road blocking traffic for 45 minutes. The false claim by Officer Stickles is the central pillar of Defendants’ probable cause argument and until now, Defendants’ written and oral statements were all the evidence the District Court had to go on, in the absence of 911 audio tapes, police body camera and dashcam footage. That is the “evidentiary standard” that the Court adopted in deciding the summary judgment motion.[2]

Plaintiff’s attorneys sought multiple times between 2015 and 2021, to obtain 911 audio tapes and dashcam footage of Officer Stickles’ patrol car but Brighton PD and Town of Brighton refused to release key evidence in their possession. Dashcam footage, for instance, would erase doubt as to Tosin’s exact location on police arrival on Wintergreen Way, that is, whether she was (i) in the “roadway” at 84 Wintergreen Way, blocking traffic (as Officer Stickles claimed)[3]; (ii) standing in front of 76 Wintergreen Way (as reported by 911 caller); or (iii) at a different location altogether.

---

[2] See ECF No. 96-1, pp. 1–8 of 21 (Google Earth and Street Map materials submitted with the Rule 60(b) motion); ECF No. 96, pp. 3–5 of 25.

[3] The term "roadway" is not clearly defined but presumably refers to middle of the street. It appears twenty-two (22) times in Defendant Stickles' deposition transcript dated 11/19/2019.

Dashcam footage would also resolve doubts as to Officer Stickles' claim that she spent considerable amount of time in the roadway with Tosin, trying to coax her to move to safety, obviously, another bogus claim debunked in the Rule 60(b) motion. (See ECF No. 96, p. 9 of 25, at (c)). The multiple transactions involving Officer. Stickles, Dr. Ogunbekun and Tosin within that short interval (1:28PM to 1:44PM) make Officer's claim unreal. (See ECF No. 85-15, p. 8 of 23, ¶2).

Additionally, Police dashcam would have captured HVAC technicians, if they were actually where they said they were – on the side of 84 Wintergreen Way, installing air-conditioner. Clearly, Defendants would be more than willing to release evidence in their possession if their version of events was truthful but it seemed more likely that dashcam footage would expose Defendants' false claims and erase the one advantage they have over their mentally incapacitated victim, who is unable to advocate for herself.

Confident that there is no audio or video footage to controvert their false narrative, Defendants cobbled together phony eyewitness testimonies that would ultimately crumble under scrutiny, as the Google satellite images filed with the Rule 60(b) motion metaphorically, dissolved the glue that held the lies together.

Contrary to District Court's opinion, there is no need for anyone to impeach Lenz's testimony; his deposition already impeached itself and exposed his insincerity. Lenz claimed falsely, that he witnessed the events ascribed to Tosin at 1:55PM. That was approximately thirty (30) minutes after Officer Stickles arrived at location and eleven minutes after Tosin was in police custody. We

know for a fact that Officer Stickles stayed with Tosin from arrival at 1:28PM to 2:16PM, when she was transported in the ambulance.

Viglino, on the other hand, wants the Court to believe that he was in the rain for nearly two (2) hours (11:30AM – 1:15PM) installing a major electrical appliance (air-conditioner) all by himself. (ECF No. 82-10, p. 2 of 2). Somehow, Officer Stickles never mentioned sighting or interacting with Viglino on arrival at 1:28PM or at any time prior to execution of MHA. Viglino went on to claim: "*I turned around and saw the Officer and her back in front of #84. The African American girl kept telling me 'I see you, I see you.'*" (ECF No. 82-10, p. 2 of 2, lines 5-7).

Dr. Ogunbekun pointed out that as at 1:44PM, Tosin was already in police custody. She was cornered by Officer Stickles on the front porch of 84 Wintergreen Way, which is at right angles (90-degrees) to where Viglino was purportedly installing the air-conditioner. (See Google image: ECF No. 96-1, p. 3 of 21). Dr. Ogunbekun argued further that:

"To see Tosin, Viglino would have had to come to the front porch where Tosin was standing with Officer. Stickles, in which case, it was Viglino that accosted Tosin, not the converse." (ECF No. 96, p. 4 of 25, ¶3).

The false depositions given by Lenz and Viglino are key evidence on which the District Court based the summary judgment decision. (See ECF No. 82-5, p. 2-3 of 3; ECF No. 82-10, p. 2 of 2; and ECF No. 90, p.3, ¶1; p.5, ¶1; p.6, line

1; p.8, footnote #4). The lies were exposed in Plaintiff's Rule 60(b) motion. (ECF No. 96, p. 3-5 of 25).

Plaintiff-Appellant respectfully submits that had the District Court reviewed the deposition of Michael Rozzi with as much zeal as it did Lenz's and Viglino's, it would have been apparent that the accounts rendered by the other two witnesses were in the realm of fiction. Rozzi who arrived at exactly the same time as Lenz (1:55PM), confirmed that police officers were already on scene. Rozzi did not report seeing Tosin dancing and kicking basketball in the rain or blocking traffic in front of 84 Wintergreen Way. (ECF No. 82-9, p. 2-3 of 3). Neither did he falsely accuse Tosin of accosting HVAC technicians, as did Lenz and Viglino.

Rozzi's deposition already impeached the testimonies of his other two colleagues but the District Court apparently preferred the alternate reality spun by Lenz and Viglino, which would explain why Rozzi's name does not feature in the 41-page decision of the Court filed May 16, 2025. This is no accidental omission but proof that the analyses of evidence conducted by the District Court is seriously flawed and warrants appellate review in the interest of justice.

It is instructive that not one resident of that small community in Brighton, NY, complained of Tosin trespassing on their property, accosting, threatening or obstructing them in any way, in the entire forty-five (45) minutes she was reportedly on the street before the police showed up. Even the 911 caller did not report that Tosin was doing anything wrong; he was simply concerned that she

had been in the rain for 45 minutes. Somehow, unappointed guardians of the community (HVAC technicians Lenz, Rozzi and Viglino) came up with incredible stories of encounters that were entirely fictional but which the District Court embraced and elevated.

Even Rozzi, who arrived late in the process and appeared more truthful than the other two colleagues, could not conceal his prejudice – he concluded in no time that the Black female "was high on some drug." (*Id.*, p. 3 of 3; ECF No. 96, p. 20 of 25, ¶12). It was not that the Black female was perhaps, ill and in need of help, but that she was a junkie that needed to be removed. All three witnesses offered to assist police officers in the illegal seizure of the person.

It came as no surprise therefore, that the District Court sought to distance itself by not mentioning Rozzi's name in the summary judgment decision, not just because of the racial bigotry displayed but also because of the devastating impact his testimony portends for the depositions of Lenz and Viglino, in the presence of a jury or unbiased umpire. It turned out that dismissing Rozzi's deposition was an error of judgment by the Court.

The same mindset as the technicians' very likely informed the actions of police officers on Wintergreen Way on May 29, 2012. How else does one explain the fact that Defendant Stickles made the call for MHA, just sixteen (16) minutes after arrival on the scene? Anyone with the minutest of experience transacting with intellectually disabled or mentally incapacitated persons will attest that sixteen (16) minutes is too little time to achieve meaningful dialogue or

resolution, even in the benign environment that prevailed before police officers intervened and MHA was invoked.

Plaintiff-Appellant contends that the Google satellite images, coupled with eyewitness Kim DeCastro's deposition confirming that she drove out of 84 Wintergreen Way and forty-five (45) minutes later, pulled into the same driveway without obstruction or interference from Tosin, obliterates Officer Stickles' false claim that Tosin was in the "roadway" at 84 Wintergreen Way blocking traffic. (See ECF No. 96, p. 9 of 25 at (a)).

Ms. DeCastro, on whose property the HVAC technicians were working, did not place Tosin in the middle of the street dancing, kicking basketball or blocking traffic. In fact, Ms. DeCastro affirmed that Tosin was walking up and down Wintergreen Way (ECF No. 82-13, p. 2 of 3 at 5-6), consistent with Dr. Ogunbekun's claim that Tosin walked up and down the sidewalk on Wintergreen Way. (ECF No. 85-17, p. 7 of 23, ¶1).

Equally compelling are satellite images that showed clearly and convincingly that the 911 caller could not have seen Tosin, if she were standing in front of 84 Wintergreen Way, as falsely claimed by Officer Stickles. (ECF No. 96, p. 9 of 25 at (b)). The 911 caller placed Tosin in front of 76 Wintergreen Way, not 84 Wintergreen Way – see police radio log. (ECF No. 82-14, p. 2 of 2).

Plaintiff-Appellant respectfully submits that the new evidence by way of Google Earth and Google Street Map images are clear and convincing evidence

that Defendant Stickles lied under oath at deposition in November 2019 and in the summary judgment motion filed June 2022, a felony/misconduct under federal law. (18 U.S.C. § 1512(3)(C)(1); 18 U.S.C. § 1506).

The District Court holds tenaciously to the premise that Dr. Ogunbekun was admittedly *"not present when many of the key interactions between Oluwatosin and the other witnesses were taking place."*. (ECF 98, p. 3 of 6, ¶1). That is simply inaccurate. Nowhere in the record, including Rule 60(b) motion, did Dr. Ogunbekun make such admission to the Court or anyone else. The misleading claim originated from Defendants' summary judgment motion and was adopted by the District Court. (See ECF No. 82-19, p. 4 of 20, ¶1). It was repudiated in the summary judgment reply and Rule 60(b) motion by Dr. Ogunbekun. (ECF No. 85-1, p. 7 of 12 at 69-75 and 86-88; ECF No. 85-17, p. 15 of 23, ¶1; and ECF No. 96, p. 14 of 25, ¶2). This is just another of the many instances where the District Court improperly ascribed to Dr. Ogunbekun, statements he did not make, views he did not express and positions he did not hold but which in fact, he refuted very strongly. (See ECF No. 96, p. 19 of 25, ¶2). The Court continued to abuse its discretion spreading narratives that are untrue and misleading.

For the record, Dr. Ogunbekun witnessed more of what transpired that afternoon on Wintergreen Way than the Defendants and eyewitnesses put together. Besides Tosin who is unable to advocate for herself, Dr. Ogunbekun is the only person that witnessed the full spectrum of events, save for the brief period he monitored his Tosin from home, less than 250ft from 84 Wintergreen

Way. Defendants sought to exploit this gap by fabricating stories presented in their summary judgment motion, which really is the foundation on which the District Court built its decision and order filed May 16, 2025.

Moreover, Dr. Ogunbekun's account of the events of May 29, 2012, has remained consistent over time, a fact that did not escape the attention of Hon. Mark W. Pedersen:

"The legal claims and factual allegations contained in the original complaint have remained consistent through the amended and second amended complaints." (ECF No. 72, p. 2 of 19, ¶1).

Going by precedent and summary judgment standards, the District Court ought never to have granted Defendants' summary judgment motion, given wide gaps in claims made by Defendants in police incident reports filed in May 2012 and at deposition in November 2019, and several unresolved issues between Plaintiff and Defendants, including (i) probable cause for MHA, (ii) excessive use of force by police officers, and (iii) head injury sustained by Tosin in the course of the MHA. *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment).

For a start, the only persons that alleged having any altercation or "key interaction" with Tosin were HVAC technicians, notably, Lenz and Viglino. The Rule 60(b) motion showed clearly and convincingly, that Lenz's and Viglino's

deposition were loaded with falsehood. Thus, the "key interactions" cited repeatedly by the District Court are no more than illusions created by persons with malicious intent, who at the least, should be put on the witness stand. The Court holds steadfastly to this fictional encounter and continues to accord it legitimacy, in total disregard of evidence and counter-claims showing that no such altercation could have taken place, as both Officers Stickles and Knutowicz, along with Dr. Ogunbekun, were already at 84 Wintergreen Way by 1:55PM, when Lenz purportedly made his observations.

It is clearly established that as at 1:44PM when Officer Stickles invoked MHA, Officer had made no contact with eyewitness Lenz, Rozzi and Viglino. Probable cause for MHA therefore, rested solely on Officer's claim that (i) Tosin was standing in the middle of the street blocking traffic for 45 minutes, and (ii) Tosin threatened to kill her Dad. The other Police officer (Knutowicz) arrived at 1:50PM, after MHA was invoked.

In evaluating the rationale and evidence for MHA, therefore, the District Court should have focused solely on transactions that occurred between Officer Stickles and Tosin, from 1:28PM to 1:44PM. Any other evidence was immaterial to the decision-making. Respectfully, the Court abused its discretion in failing to isolate the evidence placed before it. Instead, the Court lumped together disparate evidence comprising fabricated statements of Lenz and Viglino, and unsubstantiated claims of Officers Stickles and Knutowicz, in the bid to justify the illegal seizure.

Besides, allegations made against Tosin in the run up to MHA are not supported by tangible evidence – there is no audio, video or credible eyewitness confirmation. There is no evidentiary proof whatsoever but the words of two White police officers accused of battering an unarmed, intellectually disabled Black woman, complemented with witness depositions that have since been shown, clearly and convincingly, to be utter fabrications. This is consistent with the evidentiary standard that the District Court adopted in granting summary judgment in favor of movants (Defendants).

As noted earlier, Officer Stickles' declarations (under oath) are fluid and cannot be taken at face value. For instance, Officer claimed that she followed Tosin "all over the neighborhood" while instructing her to stop running away. Turns out per Google Maps, that Tosin traversed just two hundred and fifty feet (250ft.), barely one (1) minute walk from home, before coming to a stop at 84 Wintergreen Way. (ECF No. 82-1, pp.3-4 of 6).

Plaintiff-Appellant respectfully submits that in the absence of tangible evidence like audio or video clips, personnel records and in particular, record of disciplinary actions, become legitimate proxies for evaluating police officers' credibility and competency regarding probable cause for and execution of MHA. Likewise for other contentious issues, including head injury sustained by Tosin in the course of the illegal seizure.

On November 18, 2013, Brighton PD issued Officer Stickles a Notice of Discipline and Charges for (i) Incompetence, (ii) making False Report, and (iii)

lacking Truthfulness with regards to a vehicle search that Officer conducted in October 2013. Brighton PD investigated the matter and its findings, documented in the notice of discipline and charges, are consistent with the lack of truthfulness, incompetence, and fraudulent misrepresentation levelled against Officer Stickles in the Rule 60(b) motion. (ECF No. 96, pp 5-20 of 25). Thus, there is no malicious intent on Plaintiff's part, in using evidence prepared by Brighton PD, to attest to Officer's credibility or lack thereof.

Plaintiff-Appellant respectfully disagrees with the District Court's assessment of the value of this piece of evidence. A jury would probably find such information relevant and credible, especially, in instances like this, where there is no tangible evidence backing up Defendants' claims and where wide gaps exist between positions held by Defendants and Plaintiffs, such as would ordinarily warrant denial of summary judgment. Plaintiff-Appellant notes that even in this instance, the District Court attempts to minimize the serious charges brought against Officer Stickles by her employer, referencing only that bit of the 2012 performance evaluation report, which states that Officer. Stickles had "shown an inability to keep calm under pressure". (ECF No. 98, p. 3 of 6, ¶1). That is serious, intentional dilution of allegations leveled against Officer Stickles.

That Brighton PD subsequently sent Officer Stickles on a sixteen (16)-hour course in January 2013, eight (8) months after the incident of May 29, 2012, suggests that either the Officer had no prior training (and basically, lied under oath) or was found to be deficient in translating prior training into practice, hence,

her enrollment in entry-level course on transacting with emotionally disturbed persons. This time around, the Officer had a certificate of attendance to show as proof of training, unlike the case with purported training in 2009, which remains unverified to date.

The District Court asserts that the decision to grant a 60(b) motion is within the "sound discretion" of the court. (*Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012)). The Court uses that judicial authority to dismiss all evidence presented in the Rule 60(b) motion as being "largely cumulative and/or merely impeaching". However, diligent review of the evidence will show that the evidence are not only clear and convincing, they are verifiable and reproducible, surpassing evidentiary standards required under Rule 60(b)(2).

The Fourth Circuit opined, in *Morgan v. Tincher*, that:

'A court "abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (citation omitted).'

(See *Morgan v. Tincher*, 90 F.4th 172, p. 8, ¶4 (4th Cir. 2024)).

Here, the District Court abandons tangible, irrefutable evidence and holds tenaciously to bald assertions rendered by persons of questionable integrity. Respectfully, that is not exercise of sound discretion but abuse of judicial discretion. It erodes public trust in the impartiality of courts. Appellate review of

the analyses of evidence done by the District Court is warranted in the interest of substantive justice.

## III. District Court erred in its analyses of evidence of fraud, misrepresentation and misconduct, and abused its discretion in denying relief under Rule 60(b)(3).

Referring to Plaintiff's Rule 60(b) motion, the District Court held that: "The application also fails under Rule 60(b)(3), since it does not show that Defendants committed fraud, misrepresentation or misconduct at all, let alone by clear and convincing evidence." (ECF No. 98, p. 6 of 6). Respectfully, Plaintiff-Appellant disagrees with the decision of the Court on Rule 60(b)(3).

### A. Materially Altered Police Radio Log and False EDPRT Training Claims

The District Court claims that there is no evidence "at all" to show that Defendants committed fraud or misconduct. However, the Court does not find Plaintiff's allegations to be frivolous or malicious or that evidence submitted is contrived; neither does it challenge the authenticity or admissibility of evidence presented in the Rule 60(b) motion. The Court also does not contest nor disprove claims by Appellant that alleged infractions by Defendants (and witnesses) influenced the decision granting summary judgment in favor of movants (Defendants).

The District Court does not systematically analyze evidence on its merit – relevance, credibility, and admissibility. Instead, the Court aggregates all the

evidence, labels them "largely cumulative and/or merely impeaching" and concludes that the motion lacks merit, in a most capricious way. In so doing, the Court breached widely accepted standards for evaluating evidence in courts of law, federal and state. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

The District Court screened-out tangible evidence including materially altered police radio log and letter from Monroe County Sheriff's Office dated May 1, 2026, disavowing Defendant Stickles' forty (40)-hour EDPRT training and membership between 2009 and 2012.[4] The claims were made by Defendant Stickles and supported with records, presumably, obtained from Brighton PD. The reply from Monroe County Sheriff's Office is critical to determining whether Officer Stickles had requisite training or experience interfacing with emotionally disturbed persons or individuals with intellectual disabilities, as the situation warranted on May 29, 2012.[5,6]

The District Court dismisses tangible evidence of fraud and fraudulent misrepresentation allegedly committed by Defendants and key witnesses, and insists there is no proof that fraud or misconduct was committed but under federal

---

[4] The Letter is in response to Plaintiff's request made on April 21, 2026, under New York State's Freedom of Information Law (FOIL).

[5] Officer. Jeffrey Ruffalo whose name appears next to Officer. Stickles' in the training records as having undergone 40-credit hour EDPRT training in 2010, does not appear to be directly connected with the Section 1983 claim.

[6] There is no claim that Officer. Knutowicz received such training or had such experience. That is not in contention here.

law, the destruction, alteration, or falsification of court records is a felony. (18 U.S.C. § 1512(3)(C)(1); 18 U.S.C. § 1506). The logical question that follows is: "At what point does altering or fabricating evidence submitted to a court become fraud?"

We know for certain that the police radio log was materially altered (forged) by hand, in a bid to convey alternate message to the District Court and jury. When, where and by whom are the unknown parameters in the equation. This is not newly discovered evidence of fraud, hence, it is not presented as a Rule 60(b)(2) issue.

Moreover, the District Court espoused Defendant Stickles' capability, even though, her performance in real-life situations suggested otherwise. The Court's endorsement apparently stems from (unverified) claims that Officer had undergone requisite training and was part of a countywide mental health crisis response team dating back to 2009. The Court affirmed that:

*"Stickles was a member of the Monroe County Emotionally Disturbed Persons Response Team, and, as such, had received training on how to interact with mentally-disturbed subjects."* (emphasis added).

(ECF No. 90, p. 4 of 141, lines 3-5).

Confronted with evidence that controvert those claims, the Court throws out Plaintiff's Rule 60(b) motion under guise of preserving finality of judgment. In like manner, the District Court stated affirmatively, under "Factual Statements" in the summary judgment decision entered May 16, 2025, that:

*'While Tosin was "letting off steam" on Wintergreen Way, as Ogunbekun maintains, contractors were working outside a neighboring home at 84 Wintergreen Way. ECF No. 82-21 at ¶ 21. Tosin approached one of the workers, Nate Lenz ("Lenz"), who later recalled, in a sworn statement to police, that Tosin was "talking crazy stuff" and making remarks to him, such as, "I'm watchin' you, I see you." ECF No. 82-5 at 1. Lenz further indicated that Tosin was dancing in the rain and talking to herself. Id.'* (emphasis added).

(ECF No. 90, p. 3 of 141, ¶1).

Thanks to Google satellite imagery, we now know that there is nothing factual about that statement culled from the Court's summary judgment decision.

Plaintiff-Appellant respectfully submits that although, district courts have discretion to grant Rule 60(b) motions, that must not be misconstrued as carte blanche for abuse of judicial discretion. *Berrios v. Ingram*, 652 F.3d 496, 509 (4th Cir. 2011) ("the abuse of discretion standard of review does not confer upon a district court carte blanche"); *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) ("a district court by definition abuses its discretion when it makes an error of law"). If anything, Rule 60(b) imposes enormous responsibility on district courts to ensure that evidentiary standards are uniformly and consistently applied, without any form of bias. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012); *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) (in considering relief under Rule 60(b), the Court must weigh the need for substantial justice against the value of preserving the

finality of judgments). The District Court did not fulfil that obligation properly, fairly, and in the true spirit of the law in the matter of *Ogunbekun v. Town of Brighton*.

That the alleged fraud involved more than one piece of evidence and fraudulent misrepresentations occurred on multiple occasions (at deposition in 2019 and in the motion for summary judgment filed June 2022), suggest that these are not random errors of omission but of commission, declarations made under penalties of perjury but with intent to mislead the Court into taking action that prejudiced Plaintiff and prevented the lawsuit from being fully litigated.

The gravity of alleged infractions lies in the fact that they originate from law enforcement and appear to be intentional acts of fraud and/or misconduct. Traditionally, courts have shown little tolerance for the kind of (mis)conduct witnessed here. [See *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) (holding that a party's failure to disclose evidence, even if the product of "mistake" or misunderstanding, nevertheless constituted "misconduct" for purposes of Rule 60(b) reopening); aff'd, *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 547 F.3d 115 (2d Cir. 2008)].

Appellate courts show equal disdain for such dishonesty:

'The Second Circuit opined that police officers who "falsify police reports, affidavits, and memorandum books" and "fabricate evidence" violate clearly established constitutional rights (*Coggins v. County of Nassau*, 988 F. Supp. 2d

231, 244 (E.D.N.Y. 2013)), and that such fabrication amounts to unacceptable "corruption of the truth-seeking function of the trial process." (*Manganiello v. City of New York*, 612 F.3d 149, 160 (2d Cir. 2010)).'

There is also the issue of when Defendants' attorneys became aware that evidence submitted to the District Court were (ostensibly) forged or materially altered. It seemed improbable that they would not have known that the police radio log, for instance, was tainted evidence. Needless to say that if attorneys were complicit in alleged infractions, that would be fraud committed on the Court, misconduct that sufficiently warrants vacatur of the summary judgment order. *United States v. Demjanjuk*, 101 F.R.D. 680, 692 (N.D. Ohio 1983) (fraud upon the court "should embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court"); *In re Lehman Brothers Holdings Inc.*, 2022 WL 3417720 (S.D.N.Y. 2022) (general claims that defense counsel mischaracterized evidence do not constitute fraud on the court, but fabrication of evidence by officers of the court does).

Clearly, Defendants' prime objective was achieved; the District Court granted summary judgment in favor of movants (Defendants) and dismissed Plaintiff's claim in its entirety, dealing fatal blow on effort to secure justice for Tosin and deter reckless intervention by law enforcement in the future.

## B. Fabricated Depositions and Inconsistencies in Sworn Statements

Evidence presented in Plaintiff's Rule 60(b) motion likewise controvert claims by Defendants Stickles regarding the second pillar on which Defendants' probable cause argument rested. Officer Stickles alleged at deposition (November 19, 2019), that Tosin threatened to harm her father at 1:44PM on May 29, 2012. According to the Officer, that was the trigger for the MHA. This version, however, contrasts sharply with the incident report filed May 29, 2012, in which Officer claimed that the threat was made at 1:50PM, on arrival of Officer. Knutowicz. (ECF No. 96-1, p. 10 of 21, lines 22-26; p. 11 of 21, lines 1-2). Officer Knutowicz conceded at deposition that she did not hear Tosin threaten to kill her father and that Dr. Ogunbekun was already at 84 Wintergreen Way by the time she arrived on scene. (See ECF No. 96, p. 12 of 25, ¶2).[7] Dr. Ogunbekun also declared that he did not hear any such threat as alleged by Officer Stickles.

Officer Stickles must have realized (or was counseled) that if the alleged threat did not occur until 1:50PM, when Officer Knutowicz arrived, that would invalidate Defendants' probable cause argument, as it would mean that MHA was invoked before the alleged threat was ever made (which is probably closer to the truth). Faced with this dilemma, Officer Stickles changed her story at deposition,

---

[7] See ECF No. 96-1, p. 10 of 21, lines 22–26, and p. 11 of 21, lines 1–2 (incident report); ECF No. 96, p. 12 of 25, ¶2.

claiming instead that the threat was made at 1:44PM, at which point she invoked MHA.

That Plaintiff's deposition preceded Defendants' by more than four (4) weeks (October 16, 2019 vs. November 19, 2019), afforded Defendants sufficient time to concoct alternate version of events in a bid to counter factual allegations made by Plaintiff. In so doing, they contradicted earlier claims made in Brighton PD incident reports, as seen in Exhibit D of Plaintiff's Rule 60(b) motion. (ECF No. 96-1, p. 10-11 of 21). The District Court however, sees absolutely nothing wrong with such contradiction in Defendants Stickles' testimony.

As argued in the Rule 60(b) motion, material inconsistency in the timing of the alleged threat to Dr. Ogunbekun's is clear and convincing proof that the allegation is contrived. Defendants sought to mislead the District Court into returning a favorable judgment, seeing that in the absence of audio or video footage and with no witness to controvert their story, it was a police officer's word against that of an intellectually disabled and mentally incapacitated victim.

Ordinarily, material inconsistency or false claims of this nature would be sufficient to vacate the summary judgment order. *Smith v. State of Oklahoma*, 418 F. Supp. 907, 909 (W.D. Okla. 1976) ("In order that perjured testimony may provide grounds for the vacation of a conviction, the petitioner must establish that the testimony was false, that it was material, and that it was knowingly and intentionally used by the government to obtain the conviction"). The foregoing is clear and convincing evidence that Defendant Stickles fraudulently

misrepresented under oath at deposition in 2019 and in the summary judgment motion filed June 2022. This also, is not an error of omission but of commission.

For Rule 60(b)(3) pleadings, evidence of fraud or fraudulent misrepresentation does not have to be newly discovered; the evidence may predate judgment as is the case with police incident reports compiled in May 2012. *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978) (under Rule 60(b)(3), the evidence of fraud need not be newly discovered and there is no due diligence requirement; the movant need only show that the fraud, misrepresentation, or misconduct prevented the party from fully and fairly presenting its case). Thus, it mattered little, when the fraud or misrepresentation was uncovered, in so far as it was within the one-year window following entry of summary judgment order. *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003).

Respectfully, the District Court abused its discretion in dismissing evidence submitted in support of Rule 60(b)(2)&(3) as being largely cumulative and/or merely impeaching, and concluding that fraud was not committed, at all, by Defendants. Holding that the application "fails to show that substantial justice outweighs the goal of preserving the finality of judgments … or that Ogunbekun possesses a meritorious claim in the first instance" is inconsistent with the strength, clarity and relevance of evidence submitted in support of the Rule 60(b) motion.

Indeed, the Court dismantled its own construct in basing the Rule 60(b) decision on whether or not there is a meritorious claim. Having declared that Dr. Ogunbekun is not legally permitted to represent the estate of Oluwatosin, an incapacitated person and having failed to appoint a Guardian ad litem or attorney to represent Tosin (See Argument #1 above), the Court is barred from making merits determination on the case. (*Berrios v. New York City Housing Authority*, 564 F.3d 130 (2d Cir. 2009). The Court abused its discretion in this instance and justice would be well served by reversing the decision and order of the Court filed May 20, 2026.

Besides, the Court's insistence that Plaintiff-Appellant demonstrate a meritorious claim as prerequisite for vacatur under Rule 60(b)(3), misapprehends the purpose of the Rule. Rule 60(b)(3) "is aimed at judgments which are unfairly obtained, not at those that are factually incorrect. This subsection of the Rule protects the fairness of the proceedings; it does not protect the correctness of verdicts." Phillips v. Stear, 783 S.E.2d 567, 574 (W. Va. 2016). Accordingly, "a party moving under Rule 60(b)(3) may prevail without showing that the alleged misconduct altered the result of the prior trial, and without showing that he or she would prevail in a retrial." *Id.*; see also Catskill Development, L.L.C. v. Park Place Entertainment Corp., 286 F. Supp. 2d 309, 312 (S.D.N.Y. 2003) (plaintiffs "need not show that the outcome would have been different absent defendant's misconduct"); Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978) (the movant need only show that the fraud, misrepresentation, or misconduct

prevented the party from fully and fairly presenting its case). It is about process not likely outcome. Thus, the Fourth Circuit, in *Morgan v. Tincher* 90 F.4th 172 (4th Cir. 2024), held that the district court erred in requiring Plaintiff to show that the undisclosed evidence would have changed the outcome of trial in order to demonstrate the meritorious nature of his claim and inability to fully and fairly present his case.

Plaintiff-Appellant contends that whereas, the determination of fraud under Rule 60(b)(3) is within the sound discretion of the District Court, the exercise of that discretion is governed by standards established by the federal court system and rules of practice. Hence, the application of those standards and rules is subject to appellate review. *Esposito v. New York*, 698 F. App'x 624 (2d Cir. 2017) (a district court abuses its discretion when its decision rests on an error of law or a clearly erroneous factual finding); *Silverman v. Rosenfeld*, 100 F. App'x 27 (2d Cir. 2004); *In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 (2d Cir. 2013); *Jeffreys v. United Technologies Corp.*, 69 F. App'x 28 (2d Cir. 2003).

Respectfully, the District Court abused its discretion in choosing expediency over truth and the finality of judgment over supremacy of justice. Had the Court exercised greater diligence in analyzing evidence and without selection bias, it might have reached a different conclusion on alleged fraud and misconduct, vacated the summary judgment order and scheduled the case for trial by jury.

That Plaintiff-Appellant is seriously prejudiced by Defendants' fraudulent acts is self-evident; the quest for justice was brought to an abrupt halt by the order of the District Court filed May 20, 2026, denying the victim of police brutality and her family the opportunity to fully present their case in court. Reversal of the order of the District Court is warranted. This is one instance where the finality of judgment must subordinate to overarching interests of justice.

## IV. District Court Abused Its Discretion and Undermined Due Process in Deciding Rule 60(b) Motion Before Opposition Papers Were Filed.

Plaintiff's Rule 60(b) motion alleging fraud, misrepresentation and other misconduct by Defendants and key eyewitnesses was filed May 15, 2026. Five days later, on May 20, 2026, the District Court issued its decision and order denying the motion. As argued in II and III above, the alleged infractions were intentional acts of fraud and fraudulent misrepresentation designed to mislead the Court into granting summary judgment in favor of Defendants. And whereas federal courts may decide motions without waiting for opposition papers to be filed, that is the exception rather than the rule, especially, when it comes to dispositive motions, as is the case here. *Geauga County Board of Health v. Malliski*, 2022-Ohio-2631, ¶23 (Ohio App. 2022) ("To rule on motions prior to the expiration of the deadlines constitutes a denial of due process/the opportunity to respond").The local rules of WDNY state in Local Rule 5.2(h) that:

"After a motion is filed and served in a pro se case, the Court will issue an order setting deadlines for filing and service of opposing papers, and for filing and service of reply papers if the moving party has stated an intent to reply."[8]

There is nothing to suggest that Defendants waived their right to formally respond to Plaintiff's allegations of fraud and misconduct as presented above. None of the evidence submitted by Plaintiff along with the Rule 60(b) motion, in particular, those dismantling the false construct erected by eyewitness Lenz, Viglino and Rozzi, was determined to be forged or inadmissible in court. Likewise, the evidence alleging fraud and fraudulent misrepresentation by Defendants.

Of note, the District Court did not dismiss Plaintiff's motion as being frivolous, malicious or for containing derogatory or offensive material in any way or form. Besides, there were no procedural deficiencies with the filing – the motion was timely, filed within one year of entry of summary judgment order; it was filed in the right court (WDNY); and there was no emergency or ex parte motion before the Court, pertaining to the case. Thus, there was no imperative for the rushed decision by the Court.

---

[8] See W.D.N.Y. Loc. R. Civ. P. 5.2(h) (effective Jan. 15, 2026). The District Court's current pro se motion instructions likewise state that, unless otherwise ordered, opposition to most motions is due within 14 calendar days after service.

In a fair and just system, the Complainant would be entitled to a response from persons or entities accused of committing serious infractions that prejudiced the Complainant, so as to determine whether an investigation, sanction or other corrective action was warranted. Conformant with Local Rule 5.2(h) of the local rules of the WDNY and Fed. R. Civ. P. 6, the District Court should have granted fourteen (14) calendar days after service of the Rule 60(b) motion for opposition papers to be served and filed, and seven (7) calendar days, thereafter, for Plaintiff's reply papers to be served and filed. Instead, the Court capriciously truncated the process. It is akin to changing the rules of the game in the middle of the game.

Essentially, the District Court absolved Defendants (and ostensibly, their attorneys) of alleged misconduct and/or felonies under federal law, without as much as a rebuttal from individuals or entities accused. The Court violated fundamental principles of due process and compromised its position as an impartial arbiter in what was already an uneven contest between non-attorney, pro se litigant representing the estate of an incapacitated person, and Defendants, represented by a law firm staffed with experienced attorneys. It is respectfully submitted that if either party to the conflict needed help pleading its cause, that courtesy would seem more fitting to an unrepresented party. Jarvis v. Vergera, 2022 WL 3417720 (N.D. Miss. 2022) (vacating summary judgment and granting opportunity to respond due to lack of notice, citing due process and the need to prevent manifest injustice for pro se litigant).

The District Court's flagrant abuse of judicial discretion warrants appellate review to preserve due process and rules of motion practice. . The order of the Court filed May 20, 2026, merits reversal in the interest of substantive justice, so that the case may be heard by a jury.

## V. District Court Erred in Failing to Uphold Tosin's First Amendment Rights.

The implausibility of verbal threats allegedly made by Tosin against eyewitness Lenz and Viglino is firmly established – Lenz arrived at location, eleven minutes after Tosin was in custody of the police, while Viglino's whereabouts could not be ascertained.[9] Evidence presented in the Rule 60(b) motion make it indisputably clear that no such altercation or "key interactions" described by the District Court transpired or could have transpired between Tosin and eyewitness Lenz and Viglino. (*See II(A) above*). Plaintiff-Appellant argued further that even if Tosin had said "I see you, I'm watchin you" to either Lenz or Viglino, that would be a statement of fact, not a threat or arrestable offence.

As for the threat to harm police officers, this is perhaps, the most egregious claim made by Defendants. The facts in this regard are also detailed in the Rule 60(b) motion. (ECF No. 96, pp.13-15 of 25). Tosin was unarmed and with body

---

[9] Tosin was illegally seized by Officer. Stickles at 1:44PMon the front porch of 84 Wintergreen Way. (See ECF No. 96, p. 19 of 25, lines 4-6).

frame of a 13-year old (as described by 911 caller), she had neither the means nor capacity to present credible threat to armed police officers.

Plaintiff-Appellant argued further that, even if Tosin, under intense fear and emotional distress, expressed harmful thought or wishes towards her assailants, that would still be within the realm of protected free speech rather than credible threat, and could not be grounds for illegal seizure of the person. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023) ("The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence"); *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (speech expressed through "hyperbolic rhetoric" on matters of public concern is protected by the First Amendment).[10]

Dr. Ogunbekun contends that none of the verbal threats ascribed to Tosin is corroborated by eyewitnesses – threats against Lenz and Viglino are not threats but statements purportedly made during encounters that never happened; the threat to kill father (Dr. Ogunbekun) fabricated by Officer Stickles, is not corroborated by any witness; while the threat against Officers Stickles and Knutowicz is not corroborated by any of the six (6) witnesses present. These are nothing more than "bald assertions" lacking evidentiary proof – there is no audio,

---

[10] See Counterman v. Colorado, 600 U.S. 66, 72–75 (2023) (holding that, for true-threat prosecutions, the First Amendment requires a subjective mens rea of at least recklessness as to the threatening nature of the communication).

no video and no witness confirmation that Tosin made any of those threats. Defendants and (false) eyewitnesses simply exploited Tosin's intellectual disability and mental incapacitation, which frankly, is reprehensible.

The District Court, nevertheless, held that the verbal threats allegedly made by Tosin against her father, and Officers Stickles and Knutowicz, constitute grounds for MHA:

"Additionally, Tosin stated that she wanted to kill her father, and that she wanted Stickles and Knutowicz to die. These facts objectively establish probable cause for an arrest under the Fourth Amendment and New York Mental Hygiene Law § 9.41, pursuant to the legal standards set forth earlier."

(ECF No. 90, p. 28 of 41, lines 2-7).

Respectfully, Appellant disagrees. The same Court that treats Defendants' bald assertions as evidence that "objectively establish probable cause", dismisses tangible, verifiable and reproducible evidence tendered by Plaintiff, as being largely cumulative and/or merely impeaching. That hardly qualifies as objective, consistent, systematic approach to reviewing evidence.

The District Court's decision filed May 20, 2026, was silent on the violation of Tosin's First Amendment rights but the issue was nevertheless, preserved. Plaintiff-Appellant respectfully submits that the District Court abused its discretion when it elevated verbal expressions allegedly made by Tosin against police officers who were assaulting her, to the level of credible threat, rather than the hyperbole or protected free speech guaranteed by the First Amendment to the

US Constitution. Since the alleged threat was made in the course of an unconstitutional arrest, any statement made by the victim or evidence obtained in that moment is inadmissible in court, per the "Fruit of Poisonous Tree" doctrine. (See: *Wong Sun v. United States*, 371 U.S. 471 (1963)).[11] Same applies to attempt by Tosin to flee inside 84 Wintergreen Way. Accordingly, the alleged verbal threats and attempted entry into 84 Wintergreen Way, should be struck from the record. *Manganiello v. City of New York,* 612 F.3d 149, 160 (2d Cir. 2010) (police fabrication of evidence amounts to "corruption of the truth-seeking function of the trial process").

Tosin Ogunbekun recently turned 40, a milestone that might never have been attained nor celebrated by her family simply because poorly trained police officers relentlessly pursued the evacuation of an unarmed, non-threatening, mentally-incapacitated female, who did nothing wrong but simply exercised her constitutional right to live freely and without harassment in the community she called "home".

Keeping America safe means keeping everyone safe, irrespective of age, race, gender, sexual orientation or mental health status. Courts must not endorse or reward reckless behavior by law enforcement officers.

---

[11] The alleged acts occurred after the illegal seizure of the person at 1:44PM.

## CONCLUSION

Plaintiff-Appellant respectfully submits that the District Court brazenly abused its discretion in its review of Plaintiff's Rule 60(b) motion. The Court minimized and sidelined critical evidence, undermined due process, failed to uphold victim's First and Fourth Amendment rights, and improperly denied the Rule 60(b) motion on account of Plaintiff's pro se status. The actions of the District Court (and Defendants) seriously prejudiced Plaintiff-Appellant, resulting in adverse outcome that could otherwise have been the case if adjudged by a jury. Wherefore, Plaintiff-Appellant respectfully prays that this Court reverse the Decision and Order of the District Court filed May 20, 2026 (ECF No. 98), remand to the District Court with instructions to grant the Rule 60(b) motion, vacate the summary judgment order entered May 16, 2025 (ECF No. 90), restore the case to the docket, and direct the Clerk of the District Court to schedule the case for jury trial.

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(B) and Second Circuit Local Rule 32.1(a)(4), the undersigned certifies that this brief complies with the type-volume limitation.

This brief contains approximately 12,706 words, including the parts exempted by Fed. R. App. P. 32(a)(7)(B)(ii) and 32(f). This brief was prepared in 14-point Times New Roman typeface, double-spaced, with one-inch margins on all sides, and 12-point Times New Roman typeface for footnotes.

Dated: September 24, 2026

Respectfully submitted,

Ibukun Ogunbekun,
Pro se As Limited Conservator
for the Estate of Oluwatosin Ogunbekun
12697 Victory Lakes Loop Bristow,
VA 20136 Telephone:
585-737-8880
Email: ibukun.ogunbekun@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2026, I electronically filed the foregoing Appellant's Brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. If filing electronically, participants in the case who are registered CM/ECF users will be served by filing via the CM/ECF system. If filing by mail or in person, I certify that copies of the foregoing were served upon counsel for Defendants-Appellees at the following addresses:

Jared Kimball Cook, Esq. Tully Rinckey, PLLC 400 Linden Oaks, Suite 110 Rochester, NY 14625 Tel: (585) 899-1408 Email: jcook@tullylegal.com

Allen Arthur Shoikhetbrod, Esq. Tully Rinckey, PLLC 1203 Troy Schenectady Road Latham, New York 12110 Tel: (518) 218-7100 Email: ashoikhetbrod@fedattorney.com

Ashleigh C. Rousseau, Esq. Tully Rinckey, PLLC 507 Plum Street, Suite 103 Syracuse, NY 13204 Tel: 315-492-4700 Email: arousseau@tullylegal.com

Dated: September 24, 2026

Respectfully submitted,

Ibukun Ogunbekun,
Pro se As Limited Conservator
for the Estate of Oluwatosin Ogunbekun
12697 Victory Lakes Loop Bristow,
VA 20136
Telephone: 585-737-8880
Email: ibukun.ogunbekun@yahoo.com